HARRIET SCHOENFELD *v.* THE CITY OF MERIDEN

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND DICKENSON, JS.

Argued November 8—decided December 15, 1949.

*Charles A. Watrous,* for the appellant (defendant).

*Denis T. O'Brien, Jr.,* with whom was *Denis T. O'Brien, 3d,* for the appellee (plaintiff).

ELLS, J. The plaintiff fell on a public sidewalk located within the city limits of Meriden and within the boundaries of a trunk-line highway constructed by the state of Connecticut. She brought this action against the city of Meriden and by stipulation of counsel it was referred to a state referee for hearing and report to the court. He heard the evidence, found the facts and reported them to the court. The defendant filed a remonstrance, it was overruled, the report was accepted and judgment was rendered for the plaintiff. The defendant has appealed.

The issues raised by the appeal are few in number and narrow in scope. The existence of a defect in the walk which was the sole proximate cause of the plaintiff's injury, freedom from contributory negligence on her part, and the amount of damages awarded are

not questioned. The main issue to be decided is whether the location of the walk within the boundaries of a trunk-line highway, although within the city limits, prevents a recovery from the defendant city.

The referee found the following facts: The place where the plaintiff fell was on the north side of West Main Street, in front of the property known as No. 525. West Main Street extends westerly from near the center of the city towards Southington. About 1905-1907, it became and still is a state trunk-line highway, the north and south boundary lines of which were marked by the state highway department by stone bounds. The walk upon which the plaintiff fell was within these lines. The highway has a concrete pavement built by the state highway department in 1910. At that time, the place where the plaintiff fell was outside the city limits, the city line being about 1000 yards east, but about 1921 it was extended westward by legislative act and the block in which the plaintiff fell has since been within the territorial limits of the city of Meriden. The city block within which No. 525 is situated extends from Vale Avenue on the east to Sylvan Avenue on the west. Neither in this block nor in the block adjoining it on the west was there a regularly constructed paved sidewalk, but there was, north of the pavement in the first-mentioned block and within the highway limits, a well-defined dirt and gravel walk in constant use by pedestrians and sufficiently broad for two persons to walk side by side. Directly in front of some steps leading up to the house known as No. 525 there were two flagstones which were smooth and laid level with the surface of the dirt walk. The surface of the walk and of these flagstones was about two feet above the level of the pavement, and at the east edge of the flagstones the walk sloped downward until it reached the pavement

level farther on. Directly adjoining the east edge of the flagstones was a hole, gully or depression in the walk, caused largely by rain water which flowed from the north bank across the walk toward the pavement. On the evening the plaintiff fell, this depression was about one and a half to two feet long, north and south, one to one and a half feet wide, east and west, and from six to ten inches deep.

The referee also found that the walk where the plaintiff fell had been defective and dangerous at least as far back as 1944, that at least two complaints to the city officials regarding its general condition had been made prior to the accident, that they had visited the location and were aware or by reasonable diligence should have been aware of the particular defect in question, and that they had remedied another defect in the walk in the immediate vicinity. About 1947, the city officials sought to bring about the construction of a regulation sidewalk to replace the existing dirt and gravel walk, the abutting owners to bear the expense of constructing the walk itself. The city officials inspected the conditions and found that it would be necessary to cut down the bank to a line selected by them and to build a retaining wall. They endeavored to have the state highway department assume the expense of cutting down the bank and building the retaining wall. This the department refused to do, and the new walk was never built.

The defendant claims that the report is insufficient for a proper presentation of the claim as to the status of the city with respect to the place of the accident and its legal liability as to control and repair of the walk. The referee's findings are supported by evidence and cannot be corrected in the particulars requested by the defendant. Upon the facts contained in the report, the trial court decided that control of

the walk had been assumed by the defendant and that it had violated its statutory duty by failing to remedy the defective condition which caused the plaintiff to fall. It concluded that under these circumstances it was of no moment that the walk was within the limits of the trunk-line highway. It is to this conclusion of law that the main argument of the defendant is directed.

The case of *Moleske* v. *MacDonald,* 109 Conn. 336, 341, 146 A. 820, is of controlling importance. We held that the statutes dealing with state highways and the duties of the highway commissioner are concerned with vehicular traffic and the incidents thereof, that sidewalks are primarily subjects of local interest, and that the statutes then in force did not impose upon the state highway commissioner any legal obligation for the condition of the sidewalk in question. In *Hornyak* v. *Fairfield,* 135 Conn. 619, 622, 67 A. 2d 562, we considered General Statutes, Sup. 1943, § 310g (as amended, Rev. 1949, § 2242), enacted subsequent to the decision in the *Moleske* case and in effect at the time the present plaintiff was injured, and we said (p. 622): "It provided that the highway commissioner, with the agreement of the town, could construct footpaths and sidewalks on state highways and charged him with the maintenance of such ways. It does not affect the situation in the case at bar because, as in *Griffith* v. *Berlin,* 130 Conn. 84, 88, 32 A. 2d 56, there is no finding that the state constructed the sidewalk in question. The state was not chargeable under the statute with maintenance of the sidewalk and had not in fact assumed control." In the last sentence of the opinion we said that the determination of liability, as between the state and a municipality, for injuries caused by defective sidewalks on state highways is not free from difficulty.

In *Moleske* v. *MacDonald,* supra, we said: "We discover no purpose and we conceive it contrary to the policy of the State reflected in its legislation, to interfere with or modify the obligations of towns for any roads or other avenues of travel, which are of only local concern. Sidewalks are of this character." In other words, where the state takes over an existing street or highway as a state road, it assumes the responsibility for its use and maintenance for all purposes incident to vehicular traffic, and it leaves undisturbed the existing responsibility of the municipalities for sidewalks and the like. For those, the municipality still has the responsibility as matter of law. It is true that the highway commissioner may construct sidewalks along state highways. General Statutes § 2242. But that section recognizes the fact that sidewalks are primarily the responsibility of the municipality, because he can only construct them by agreement with the municipal officers; state-aid funds available to the municipality must be used; the highway department is responsible for ordinary maintenance, but the municipality must look out for snow and ice; and the state is not liable for accidents on the walk except where it is constructed entirely with trunk-line funds. There is nothing in the two cases which followed the *Moleske* case which prevents our taking that position. In *Griffith* v. *Berlin,* supra, the accident occurred on a path along the shoulder of the road, control over which was held necessarily to be incident to the state's control of state highways, as explained in the *Moleske* case. In *Hornyak* v. *Fairfield,* supra, the defect was in the edge of the walk where it came to the wrought part of the highway, and the issue was really whether that particular place was a part of the highway constructed by the state; and actual control became important.

The walk presently involved was not in a part of the

highway designated for ordinary vehicular traffic. The topography was such as to divide the ground upon which the walk lay from the wrought part of the high-way. For this reason the case is distinguishable from *Griffith* v. *Berlin,* supra.

The remaining question relates to a finding by the state referee that the defect had existed sufficiently long to charge the city with constructive notice of it and to furnish a sufficient time to remedy it. The defendant's first claim is that the evidence does not support the finding. There was direct evidence that the defect described by the plaintiff, which caused the fall, had existed in substantially the same condition for at least a year. This, with other relevant facts, sufficiently supports a finding of constructive notice. The second claim is that the finding of constructive notice should not have been made by the state referee because it was a conclusion of law to be determined by the court from facts set up in the finding. The claim does not appear to have been made to the trial court, but in any event the question was one of fact to be determined by the referee. *Davanza* v. *Bridgeport,* 118 Conn. 23, 25, 170 A. 484.

There is no error.

In this opinion the other judges concurred.